■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARL TOLBERT, Appellant. [603 NYS2d 844] —Judgment, Supreme Court, New York County (Nicholas Figueroa, J.), rendered February 10, 1992, convicting defendant, after a jury trial, of assault in the second degree and sentencing him, as a violent predicate felony offender, to a term of three to six years, unanimously reversed on the law and the facts and as a matter of discretion in the interest of justice, and the matter is remanded for a new trial.

The complainant withdrew one hundred dollars from an ATM and began to walk home. Shortly thereafter, someone tapped him on the shoulder and, when he turned around, he was struck above the eye with a blunt object. The complainant testified that he observed the defendant crouched a few feet away from him and that the defendant twice lunged at his pockets without recovering any money. The complainant struggled to his feet, flagged a passing car, and was driven to

the precinct. Two and one-half months later, he identified defendant in a line-up.

The defendant put forth a mistaken identification defense and sought to establish an alibi, which was corroborated by four witnesses. In summation, defense counsel stressed the fact that the circumstances under which the complainant observed his attacker were poor: the street was dimly lit, there was blood dripping into the complainant's eye, and the blow to his head left him in a "sort of dream-like shock as to what had happened." Although the complainant stated that his attacker did not have facial hair, four defense witnesses testified that defendant had a beard and mustache on the day of the attack. This fact was corroborated by a police officer, who had taken defendant's photograph only two days before the complainant was attacked. In addition, the complainant's description of his assailant immediately after the attack differed significantly from the description he gave at trial. During its two days of deliberation, the jury informed the court three times that it was deadlocked. Immediately after the court delivered an *Allen* charge, the jury returned its verdict acquitting defendant of attempted robbery, but convicting him of assault.

Although there was sufficient evidence to justify the jury's verdict, the cumulative effect of errors in the prosecutor's summation deprived defendant of a fair trial *(People v Butler, 185 AD2d 141)*. In summation, the prosecutor vouched for the truthfulness of the complaining witness, denigrated the defense and defense witnesses, impermissibly referred to suppressed evidence, and misrepresented evidence. The prosecutor's improper summation comments did not constitute proper response to defense counsel's summation and exceeded the bounds of fair comment *(see, People v Galloway,* 54 NY2d 396, 398). Defense counsel carefully refrained from attacks on the credibility of the complaining witness and emphasized that "it is not our position that [the complainant] is lying; it is our position that he is wrong; he is mistaken." Nevertheless, the prosecutor asserted that the complainant was "honest" and "telling you the truth". At the other extreme, he characterized defendant's alibi defense as "a conscious fraud," "a conscious deceit," and "a concoction of lies and falsehoods." He repeatedly asserted that the defense witnesses were liars, in contrast to "[the] candor, [the] honesty and believability of [the complainant]." This argument culminated in his gratuitous reference to the defense witnesses as "a pack of whatever they are". This line of argument, suggesting that the

People's witnesses are credible, whereas the defendant's witnesses are incredible, has been condemned by this Court (see, e.g., People v Roman, 150 AD2d 252, 257, vacated by reason of defendant's death 153 AD2d 812). In addition, even though the complainant's identification of defendant from police photographs had been suppressed, the prosecutor informed the jury that "something happened good" on January 26th, the date on which the complainant identified defendant from police photographs. Finally, the prosecutor unfairly bolstered the complainant's ability to identify defendant, characterizing the complainant as a "trained observer" based merely upon his training as an actor. The court compounded this error by instructing the jury on the People's theory.

Defendant preserved most of his appellate arguments with respect to the prosecutor's summation since immediately after the prosecutor concluded his summation, defense counsel requested a mistrial or a curative instruction (see, People v Medina, 53 NY2d 951). The court gave a curative instruction, which defense counsel objected to as "not curative enough." We agree. Although the court instructed the jurors to disregard the prosecutor's personal opinion with respect to the credibility of the witnesses, it also legitimatized those arguments by stating that it was "part of the prosecution case * * * that the witnesses are not being completely truthful." In addition, the court failed to instruct the jury to disregard the prosecutor's reference to something good happening on January 26th. Reversal is required because the prosecutor's misconduct in summation may very well have tipped the scales against defendant, especially since the evidence against defendant was not overwhelming (People v Shanis, 36 NY2d 697, 699).

We have considered the defendant's remaining contentions and find them to be without merit or unpreserved by objection. Concur—Carro, J. P., Rosenberger, Ellerin and Kassal, JJ.