■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TERRIEN WILLIAMS, Appellant. [813 NYS2d 606]—

Appeal from a judgment of the Supreme Court, Erie County (Richard C. Kloch, Sr., A.J.), rendered August 15, 2003. The judgment convicted defendant, upon a jury verdict, of murder in the second degree, robbery in the first degree (two counts) and criminal possession of a weapon in the third degree.

It is hereby ordered that the judgment so appealed from be and the same hereby is affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of one count each of murder in the second degree (Penal Law § 125.25 [3]) and criminal possession of a weapon in the third degree (§ 265.02 [1]) and two counts of robbery in the first degree (§ 160.15 [1], [2]). Contrary to defendant's contention, the verdict is not against the weight of the evidence (*see generally People v Bleakley*, 69 NY2d 490, 495 [1987]). "Great deference is accorded to the jury's resolution of credibility issues . . . , and it cannot be said herein that the jury failed to give the evidence the weight it should be accorded" (*People v McKinnon*, 15 AD3d 842, 842 [2005], *lv denied* 4 NY3d 888 [2005]). Contrary to the further contention of defendant, Supreme Court did not abuse its discretion in admitting autopsy photographs of the victim in evidence. "Photographic evidence should be excluded only if its sole purpose is to arouse the emotions of the jury and to prejudice the defendant," and that was not the case here (*People v Pobliner*, 32 NY2d 356, 370 [1973], *rearg denied* 33 NY2d 657 [1973], *cert denied* 416 US 905 [1974]; *see People v Giles*, 20 AD3d 863, 864 [2005], *lv denied* 5 NY3d 806 [2005]).

Contrary to the further contention of defendant and the conclusion of the dissent, defendant was not deprived of a fair trial by prosecutorial misconduct. Defendant failed to preserve his contention for our review with respect to the majority of the instances of alleged misconduct (*see* CPL 470.05 [2]), and we decline to exercise our power to address them as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]). In any event, even assuming, arguendo, that defendant's contention is preserved for our review with respect to all of the instances of alleged misconduct, we would nevertheless conclude that reversal is not warranted. While we agree with the dissent that certain of the prosecutor's comments during cross-examination of a defense witness were improper, we cannot agree with the dissent that they were so egregious as to deprive defendant of a fair trial (*see People v Melendez*, 11 AD3d 983, 984 [2004], *lv denied* 4 NY3d 888 [2005]; *People v White*, 291

AD2d 842 [2002], *lv denied* 98 NY2d 656 [2002]). We further conclude that the prosecutor's comments on summation were fair comment on the evidence and "did not exceed the broad bounds of rhetorical comment permissible in closing argument" (*People v Galloway*, 54 NY2d 396, 399 [1981]). In any event, the court alleviated any prejudice arising from the prosecutor's comments and summation by instructing the jury that the comments and summations of the prosecutor and defense counsel do not constitute evidence (*see People v Armonte*, 287 AD2d 645, 646 [2001]). Defendant did not object to the court's instruction, nor did he request a mistrial, and thus "the curative instruction[ ] must be deemed to have corrected [any] error to the defendant's satisfaction" (*People v Heide*, 84 NY2d 943, 944 [1994]; *see generally Armonte*, 287 AD2d at 646).

Finally, we conclude that defendant received effective assistance of counsel (*see generally People v Baldi*, 54 NY2d 137, 147 [1981]), and the sentence is not unduly harsh or severe.

All concur except Gorski and Green, JJ., who dissent and vote to reverse in accordance with the following memorandum.

Gorski and Green, JJ. (dissenting). We respectfully dissent because we agree with defendant that he was deprived of a fair trial based on prosecutorial misconduct. Although certain alleged instances of prosecutorial misconduct are not preserved for our review (*see* CPL 470.05 [2] [a]), we would nevertheless exercise our power to review defendant's contention with respect to those instances as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]).

We note that the prosecution relied heavily on the identification of defendant by the victim's wife. She did not observe the shooting but, after hearing the shot that killed her husband, she testified that she observed defendant standing over him. The defense presented the testimony of several of defendant's family members who testified that defendant was asleep at home on the night of the murder. The defense also presented the testimony of the victim's neighbor, who testified that the victim's wife was a crack dealer. She further testified that she observed three men leaving the victim's home after the shooting and that defendant was not one of those men. The outcome of the case was, therefore, dependent solely on the credibility of the witnesses.

The most egregious instances of prosecutorial misconduct occurred during several interchanges with a witness for the defense, during which the prosecutor was derisive and sarcastic. The prosecutor, inter alia, accused the witness of "chang[ing] sides" because she was a prosecution witness in the trial of a

codefendant. In addition, the prosecutor implied that the oath of the witness was unreliable because the witness had initially "sw[orn] to God" that the codefendant was on the porch of the victim's home and had later "sw[orn]" that he was not. The prosecutor stated, "I guess God's going to have to sort that out." Later during the cross-examination of that witness, the prosecutor stated, "Well, we know what your oath is worth, right?" In addition, the prosecutor asked the witness whether she had smoked crack prior to her testimony and, when she denied that she had, the prosecutor asked her whether she was going to "[g]et to that later tonight." The prosecutor also asked the witness whether she would like to apologize to the victim's wife for lacking "the courage to stand up and tell this jury the truth."

The prosecutor also engaged in misconduct on summation. During his summation, the prosecutor referred to that same defense witness in stating, "There isn't a person on this planet who is going to convict anybody of anything based on [that witness's] testimony. I wouldn't believe [that witness] if she told me I had a gray pinstripe suit on right now." He questioned how the defense could "even put a witness like that on the stand" and stated that he "actually feel[s] sorry for her, . . . [b]ut pity in itself doesn't make her credible." In addition, he made inappropriate comments about defendant's alibi witnesses, stating that there were "outright blatant contradictions" in their testimony, and he characterized them as a "family that couldn't get their story straight." After noting that not one of the alibi witnesses testified that he or she had observed defendant at or around 2:00 A.M., the time of the shooting, the prosecutor stated, "Alibi? That's not an alibi, ladies and gentleman. That's fabrication. That's fiction[,] . . . complete and utter fabrication. Fabrication." The prosecutor further admonished the jury that, "[j]ust 'cause they're selling, ladies and gentlemen, doesn't mean that you're buying." The prosecutor also accused defendant, the final witness to testify at trial, of tailoring his testimony to the evidence presented, and the prosecutor invited the jury to "assume [defendant's] right. Let's—let's go to Disney World for a minute."

Although we recognize that reversal "is an ill-suited remedy for prosecutorial misconduct," reversal for prosecutorial misconduct is nevertheless warranted when the prosecutor's conduct is so egregious that the defendant was deprived of his or her right to a fair trial (*People v Galloway*, 54 NY2d 396, 401 [1981]; *see generally People v Johnson*, 303 AD2d 967, 968 [2003], *lv denied* 100 NY3d 583). A prosecutor may " 'strike

hard blows, [but] he [or she] is not at liberty to strike foul ones. It is as much his [or her] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one' " (*People v Mott*, 94 AD2d 415, 418 [1983], quoting *Berger v United States*, 295 US 78, 88 [1935]). Reversal is mandated when the conduct of the prosecutor has caused "such substantial prejudice to the defendant that he [or she] has been denied due process of law. In measuring whether substantial prejudice has occurred, one must look at the severity and frequency of the conduct, whether the [trial] court took appropriate action to dilute the effect of that conduct, and whether review of the evidence indicates that without the conduct the same result would undoubtedly have been reached" (*id.* at 419).

Here, the evidence of defendant's guilt is not overwhelming and, as we previously noted, the outcome of the case was dependent solely on the credibility of the witnesses. It is our conclusion that the prosecutor's cross-examination of the defense witness as set forth herein, in conjunction with the prosecutor's improper comments on summation regarding that witness as well as the alibi witnesses, could have " 'tip[ped] the scales' " against defendant (*People v Elliott*, 294 AD2d 870, 870 [2002], *lv denied* 98 NY2d 696 [2002], quoting *People v Tolbert*, 198 AD2d 132, 134 [1993], *lv denied* 83 NY2d 811 [1994]). We are unable to conclude herein that the same result "would undoubtedly have been reached" in the absence of the prosecutorial misconduct (*Mott*, 94 AD2d at 419). We therefore would reverse the judgment and grant defendant a new trial on counts one through three and five of the indictment. Present—Hurlbutt, J.P., Scudder, Kehoe, Gorski and Green, JJ.